# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ANDRE LEMAURIO JOHNSON, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>DAVID FRANKENBERG, )<br>    Defendant. ) | Civil Action No. 3:24-cv-00089<br>Chief Judge Campbell / Frensley |

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION AND BACKGROUND

Plaintiff Andre LeMaurio Johnson brought this pro se action against David Frankenberg ("Defendant"), the Chief Financial Officer ("CFO") of Nashville Electric Service ("NES") alleging that Defendant is in breach of contract and his fiduciary duties. Docket No. 1. As relief, the Complaint requests a temporary injunction against Defendant to have him immediately restore electric service until the rights of the parties can be determined, as well as the return of collateral security associated with Plaintiff's account, which is alleged to be Plaintiff's application for electric services (the "Application"). *Id.* at 2.

This matter is now before the Court upon a Motion to Dismiss filed by Defendant. Docket No. 6. In support of that Motion, Defendant has contemporaneously filed a Memorandum of Law. Docket No. 7. Defendant asserts that he did not have a contractual relationship or fiduciary duty with Plaintiff that he could breach. *Id.* Defendant further argues that he did not issue any securities to Mr. Johnson that would allow for a securities fraud claim, that Defendant is not a bank subject to federal banking statutes, that Defendant did not discriminate against Plaintiff in credit transactions that would invoke federal credit opportunity statutes, and that Defendant did not

breach any duty owed to Plaintiff, negating his claim for infliction of emotional distress. *Id.* at 1-2. Defendant asserts that Plaintiff's electric service was discontinued due to Plaintiff not paying his electric bill. *Id.* at 6.

Plaintiff has filed "Plaintiff's Objection to Defendant's Motion to Dismiss," which the Court will construe as a Response in Opposition. Docket No. 8. In his Response, Plaintiff denies that there was no fiduciary relationship with Defendant and that service was discontinued due to non-payment, alleging that he made timely partial payments that Defendant admits to receiving and which Defendant returned in bad faith. *Id.* at 2. Plaintiff further argues that collateral securities were in fact deposited to NES and contends that the matter caused emotional distress because he expected an outcome as an investor and did not receive that outcome. *Id.* at 4-5.

Defendant has filed a Reply, stating that Plaintiff's Response fails to substantively address the legal arguments in Defendant's Motion to Dismiss. Docket No. 9. Defendant asserts that Plaintiff incorrectly stated that power of attorney can be conveyed without the appointee's consent, admitted to breaching his contract with NES and did not address the fact that NES is not a bank or savings association. *Id.* at 1-4. Defendant also argues that NES did not make a discriminatory credit decision and that Plaintiff did not identify a breach of any duty that would support a claim for emotional distress. *Id.* at 4.

For the reasons set forth below, the undersigned recommends that Defendant's Motion to Dismiss (Docket No. 6) be **GRANTED**, and that Plaintiff's claims against Defendant be **DISMISSED**.

## II. LAW AND ANALYSIS

### A. Motions to Dismiss Under Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'merely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Id.*, *quoting Twombly*, 550 U.S. at 557 (internal brackets omitted).

When ruling on a defendant's motion to dismiss, the court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). In contrast, the Court does not have to accept unsupported legal conclusions. *Iqbal*, 556 U.S. at 678.

The court should allow "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. But a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555. "'[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation omitted). Mere recitation of the elements of a cause of action or an "unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. *Iqbal*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 555. The court must "accept as true all non-conclusory allegations in the complaint. . ." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

Pro se complaints are to be construed liberally. *Dotson v. Collins*, 317 F. App'x 439, 443

(6th Cir. 2008), *citing Haines v. Kerner*, 404 U.S. 519, 520 (1972). But "the less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts. . . ." *Grinter v. Knight*, 532 F. 3d 567, 577 (6th Cir. 2008) (internal quotation marks and citation omitted).

**B.     Breach of Contract**

To succeed on a breach-of-contract claim under Tennessee law, a Plaintiff must show that (1) an enforceable contract exists, (2) a party to the contract fails to perform according to the contract's terms, thereby breaching the contract, and (3) the breach results in damages to the nonbreaching party. *Parker v. Magna Seating of Am., Inc.*, 2022 WL 2116045, at *1, *3 (6th Cir. Apr. 14, 2022), *citing ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

**C.     Breach of Fiduciary Duty**

Plaintiff asserts that Defendant breached his fiduciary duty by failing to credit the equitable interest to the principal account, alleging violations of the Federal Depository Insurance Act (the "FDIA"), Federal Reserve Act (the "FRA"), and the Equal Credit Opportunity Act (the "ECOA"). Docket No. 1, p. 3. A party claiming a breach of fiduciary duty must show "(1) the existence of a fiduciary duty (2) that was breached (3) proximately causing damages." *Wischermann Partners, Inc. v. Nashville Hosp. Cap. LLC*, 2022 WL 2231934, at *4 (6th Cir. Jun. 21, 2022), *citing Pagliara v. Johnson Barton Proctor & Rose, LLP*, 708 F. 3d 813, 818 (6th Cir. 2013). A fiduciary duty may arise "whenever confidence is reposed by one party in another who exercises dominion and influence." *Palgiara*, 708 F. 3d at 818, *citing Thompson v. Am. Gen. Life & Accident Ins. Co.*, 404 F. Supp. 2d 1023, 1028 (M.D. Tenn. 2005). A fiduciary duty is established by the execution and exercise of a durable power of attorney. *Mitchell v. Johnson*, 646 S.W. 3d 754, 766 (Tenn. Ct. App. 2021), *citing Childress v. Currie*, 74 S. W. 3d 324, 328-29 (Tenn. 2002).

### D.     Violation of the Federal Deposit Insurance Act

The FDIA insures the "deposits of all banks and saving associations which are entitled to the benefits of insurance under this Act." 12 U.S.C. § 1811. A bank refers to "any national bank and State bank, and any Federal branch and insured branch" and "includes any former savings association." 12 U.S.C. § 1813(a)(1). The definition of savings association includes "any Federal savings association; any state savings association; and any corporation (other than a bank) that the Board of Directors and the Comptroller of the Currency jointly determine to be operating in substantially the same manner as a savings association." 12 U.S.C. § 1813(b)(1).

### E.     Violation of the Federal Reserve Act

Section 16 of the FRA concerns the issuance of Federal Reserve notes, with paragraph 2 stating that, "any federal reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require." 12 U.S.C.§ 412. A member bank under the Act refers to "any national bank, State bank, or bank or trust company which has become a member of one of the reserve banks under this Act," with "reserve bank" meaning a Federal reserve bank.  12 U.S.C. § 221. Section 29 of the FRA provides that Tier 2 and Tier 3 violations are subject to civil penalties of $25,000 per day and up to $1,000,000 per day, respectively. 12 U.S.C. § 504(b)-(d).

### F.     Violation of the Equal Credit Opportunity Act

The ECOA deems it unlawful for:

> [A]ny creditor to discriminate against any applicant, with respect to any aspect of a credit transaction (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the

Consumer Credit Protection Act [15 USCS §§ 1601 et seq.].

15 U.S.C. §1691(a).

A creditor under the ECOA is "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). To survive a motion to dismiss, the Sixth Circuit has recognized that:

> [T]o state a claim for violations of ECOA, a plaintiff must allege facts that plausibly suggest: (1) the plaintiff was a member of a protected class; (2) the plaintiff applied for credit from defendants; and (3) the plaintiff was denied credit on the basis of his or her protected class. Facts that might plausibly suggest that the denial of credit was because of or on the basis of an applicant's [protected status may include: (1) that the applicant was qualified to receive credit and was denied credit despite being qualified; (2) facts demonstrating discriminatory animus or treatment by the defendant; or (3) that persons not within the protected class were granted extensions of credit by defendant.

*Wilson v. Atlanticus Servs. Corp.*, No. 19-11672, 2020 WL 2393198, at *3 (E.D. Mich. Jan. 10, 2020), *citing Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 980 (D. Ore. 2016).

F. **Securities Fraud**

The elements of a claim for securities fraud are: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance (or transaction causation); (5) economic loss; and (6) loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42. A security is defined as:

> (A) a note, stock certificate, treasury stock certificate, bond, treasury bond, debenture, certificate of deposit, interest coupon, bill, check, draft, warrant, debit instrument as defined in section 916(c) of the Electronic Fund Transfer Act, money order, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of

indebtedness, certificate of interest in or participation in any profit-sharing agreement, collateral-trust certificate, pre-reorganization certificate of subscription, transferable share, investment contract, voting trust certificate, or certificate of interest in tangible or intangible property;

(B) an instrument evidencing ownership of goods, wares, or merchandise;

(C) any other written instrument commonly known as a security;

(D) a certificate of interest in, certificate of participation in, certificate for, receipt for, or warrant or option or other right to subscribe to or purchase, any of the foregoing; or

(E) a blank form of any of the foregoing[.]

18 U.S.C. §513(c)(3).

### G. Infliction of Emotional Distress

Under Tennessee law, intentional infliction of emotional distress requires that a defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff. *Rogers v. Louisville Land Co.*, 367 S. W. 3d 196, 205 (Tenn. 2012), *citing Lourcey v. Estate of Scarlett*, 146 S. W. 3d 48, 51 (Tenn. 2004). The elements for negligent infliction of emotional distress include the elements of a general negligence claim (duty, breach of duty, injury or loss, causation of fact, and proximation) and require that the plaintiff prove that the defendant's conduct caused a severe emotional injury. *Id.*, *citing Lourcey*, 146 S. W. 3d at 52.

### H. The Case at Bar

In the instant case, even construing Plaintiff's complaint liberally, his complaint does not allege sufficient facts to state a plausible claim to relief, so Defendant's motion to dismiss should be granted. As an initial matter, although Plaintiff only names Mr. Frankenberg as a Defendant, Plaintiff's claims related to his contract for electric services are only applicable to NES. While

7

Case 3:24-cv-00089    Document 11    Filed 07/18/24    Page 7 of 12 PageID #: 87

NES is clearly not a named party in this action, based on the Plaintiff's pro se status and because the parties both reference the conduct of NES, the Court will address Plaintiff's claims as if pled against both Mr. Frankenberg and NES,

Plaintiff alleges a breach of contract by Mr. Frankenberg due to the disconnection of his electric services. Docket No. 1. Plaintiff does not attach a contract or otherwise plead facts consistent with a contract of electric service with Mr. Frankenberg, so the claim must fail. Plaintiff did enter into a contract with NES on October 5, 2023, for the provision of electric service. Docket No. 1-1, p. 4. The Schedule of Rules & Regulations for the Electric Power Board of the Metropolitan Government of Nashville and Davidson County ("Schedule") is a part of all contracts for receiving electric service from NES, and #12 of the Schedule provides that "NES reserves the right to discontinue service and disconnect its lines and remove its property for any of the following reasons:" with one of these reasons being "nonpayment of bills upon seven days' notice to customer." Docket No. 7-1, p. 9. Plaintiff "denies that [he] failed to make timely payments" and avers that his service was not supposed to be disconnected because Defendant admitted that partial payment was provided. Docket No. 8, p. 5. However, as confirmed by the three letters that Plaintiff received, customers must make timely, full payments of their bills to maintain service. *See* Docket No. 1-1, p. 1-3. Because Plaintiff admits he only made partial payments, he was in fact in breach of the contract, and does not have a claim against NES for breaching the contract to provide electric services. *See* Docket No. 8, p. 5.

Plaintiff alleges that Defendant was in breach of his fiduciary duty by not "crediting the equitable interest to the principal account." Docket No. 1, p. 3. By delivering a letter of instructions and a durable power of attorney to Defendant, Plaintiff asserts that a fiduciary relationship was established and then breached when Plaintiff's electric services were suspended. *See Id.* at 3.

However, a fiduciary relationship is only established once a durable power of attorney has been executed and exercised by the attorney-in fact. *See Mitchell*, 646 S. W. 3d at 766, *citing Childress*, 74 S. W. 3d at 328-29. There is no evidence that Defendant exercised his duties as Plaintiff's attorney-in-fact; in fact, Plaintiff received three notices from NES alerting him that his requests were not authorized and that NES could not exercise these duties. *See* Docket No. 1-1, p. 1-3. Consequently, Plaintiff has not met his burden for establishing the existence of a fiduciary duty, and his claim for breach of fiduciary duty cannot stand. *See Wischermann Partners*, 2022 WL 2231934, at *4, *citing Pagliara*, 708 F. 3d at 818.

Plaintiff avers that Defendant violated the FDIA by "not crediting the equitable interest to the principal account." Plaintiff also alleges that Defendant committed Tier 3 and Tier 2 violations of Section 29 of the FRA, which would subject Defendant to a fine. However, this statute only applies to bank and savings associations, and Plaintiff has not alleged facts that would justify applying the Act to Defendant or NES. *See Greathouse v. Hayes*, 2023 WL 6882227, at *2 (W. D. Mich., Sept. 15, 2023), *report and recommendation adopted*, 2023 WL 6880195 (W. D. Mich., Oct. 18, 2023) (finding that when the claimant alleged that the defendant, the CFO of an energy company, violated Section 29 of the Federal Reserve Act, the claim was without merit because the defendant was not a bank under the Act).

Plaintiff asserts that the civil penalties outlined in 12 U.S.C. § 504 apply to institution-affiliated parties as defined under section 3(u) of the FDIA. Section 3(u) identifies an institution-affiliated party as "any shareholder (other than a bank holding company or savings and loan holding company), consultant, joint venture partner, and any other person as determined by the appropriate Federal banking agency (by regulation or case-by-case) who participates in the conduct of the affairs of an insured depository institution." 12 U.S.C. § 1813(u)(3). However,

9

Case 3:24-cv-00089    Document 11    Filed 07/18/24    Page 9 of 12 PageID #: 89

Plaintiff does not explain how Defendant qualifies as someone who participates in the conduct of the affairs of an insured depository institution, nor how NES is an insured depository institution, which is defined as "any bank or savings association the deposits of which are insured by the Corporation pursuant to this Act [12 USCS §§ 1811 et seq.]." Furthermore, private individuals do not have a private right of action to enforce Section 29 of the Federal Reserve Act, so Plaintiff's claim must fail. *See Greathouse*, 2023 WL 6882227, at *2, *citing* '*Harp v. Police & Fire Fed. Credit Union*, 2023 WL 5152625, at *4 (E. D. Pa. Aug. 10, 2023).

Plaintiff also alleges violations of the ECOA. However, Plaintiff does not allege sufficient facts to conclude that he is part of a protected class, that he applied for credit from Defendant or NES, or that Defendant or NES are a creditor bound by the Act, so his claim cannot survive a motion to dismiss. *See* Docket No. 1; *see Wilson*, No. 19-11672, 2020 WL 2393198, at *3, *citing Egbukichi*, 184 F. Supp. 3d at 980.

Plaintiff avers that Defendant also committed securities fraud and identified the Application as a "collateral security." *See* Docket No. 1. However, the Application does not fall within the statutory definition of a security, and Plaintiff does not plead facts consistent with the Application qualifying as a security, so he has not met the burden for establishing the existence of a security. Without a security, there cannot be securities fraud, so this claim fails. *See Dura Pharmaceuticals*, 544 U.S. at 341-42.

Finally, Plaintiff avers an infliction of emotional distress due to NES knowingly and intentionally suspending his electric service, alleging that his injury was the loss of durable and perishable goods and the fact that the outcome he expected as the beneficiary of a fiduciary relationship was denied or breached in bad faith. *See* Docket No 1, p. 3; Docket No. 8, p. 5. Plaintiff does not specify whether his claim is for intentional or negligent infliction of emotional

distress, so the court will address both. Regarding intentional infliction of emotional distress, Plaintiff admits he only made partial payments, and as stated above, this entitled NES to disconnect his services, so Plaintiff has not established that NES' conduct was so outrageous that it is not tolerated by civilized society. Consequently, Defendant and NES are not liable for intentional infliction of emotional distress. *See Rogers*, 367 S. W. 3d at 205, *citing Lourcey*, 146 S. W. 3d at 51 (Tenn. 2004).

Plaintiff also does not plead any facts that would indicate negligent infliction of emotional distress. As stated above, Defendant did not have any fiduciary duty to Plaintiff, and Plaintiff was aware of this fact because NES sent him several notices to that effect. *See* Docket No. 1-1, p. 1-3. NES did not breach its duty to Plaintiff to provide electric service as Plaintiff admitted he did not pay his entire bill, which constituted a breach of the contract and permitted NES to disconnect electric services. Because Defendant and NES did not breach a duty to Plaintiff, they are not liable for negligent infliction of emotional distress. *See Rogers*, 367 S. W. 3d at 205, *citing Lourcey*, 146 S. W. 3d at 52 (Tenn. 2004).

### III. CONCLUSION

For the forgoing reasons, the undersigned recommends that Defendant's Motion to Dismiss (Docket No. 6) be **GRANTED**, and that Plaintiff's claims against Defendant be **DISMISSED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See*

*Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72.

 

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**